JOYjSTEvS, J.
I concur in the opinion de-
livered by the President, and do not propose to add anj'thing to his discussion of the case. I wish to say a word, however, to explain my views of the case of McCullough & als. v. Sommerville, which gave rise,- on a former occasion, to considerable discussion and difference of opinion in this court. Morriss’ adm’r v. Morriss’ adm’r, 4 Gratt. 293. In that case, Judge Daniel, with whom Judge Brooke concurred, considered the case of McCullough & als. v. Sommerville as decided on the assumption, as a general principle of equity, that in the case of an insolvent partnership, the partnership assets must be applied to the payment of 'the partnership debts, and the separate assets of the partners to payment of their separate debts, in accordance with the rule which prevails in bankruptcy. Judge Allen, with whom Judge Cabell concurred, did not consider the case as proceeding on this principle, and confessed himself unable to understand on what ground the court undertook to reform the deed, which was admitted to be fair and bona fide.
The case, as it seems to me, may either have proceeded on the ground supposed by Judge Daniel, or on the ground that as Gillespie, the partner of McCullough, did not execute the deed, the partnership creditors had an equity through him to charge the partnership assets with the payment of their debts. Upon either ground, the partnership assets were misapplied by the deed, so far as they were appropriated to the payment of the individual debts of McCullough equally with the debts of the firm. This right of the partnership creditors was treated as in the nature of an equitable lien, which the separate act of one partner could not defeat. It became necessary, therefore, to reform the deed, so as secure the preference of the partnership creditors in respect to the partnership debts. The arrangement made by the deed being thus disturbed in respect to the partnership assets, justice to the individual creditors required that a corresponding change should be made in respect to McCullough’s individual property. This was so, even if there was no general rule requiring that the separate property of each partner should be devoted first to his separate debts.
It was said in that case, that this reformation of the deed would effect the “probable intention of the grantor.” This expression is obscure. Ifor there is no evidence in the case that McCullough did not really intend exactly what he effected by the terms of the deed, namely, a blending of both classes of property and of both classes *of debts, without discrimination. But I suppose the meaning of the court to be only this, that McCullough intended, by means of the two classes of property, to provide for the payment of both classes of debts, and that he probably considered that the substantial effect of the arrangement was, to apply his individual property to the payment of his individual debts, and the partnership property to the payment of the partnership debts. The intention was not the ground on which the court proceeded in reforming the deed.
Whatever was the ground on which the court proceeded in reforming the deed in that case, it equally applies in this. If it was the ground supposed by Judge Daniel, it of course applies equally in the present case. If it was the other ground, above suggested by me, it also applies in this case, because Adams did not execute the deed, and the creditors of Rogers, Adams & Co. have, therefore, a right, through him, to have the assets of that firm applied first to the payment of their debts. I do not think it necessary, therefore, to determine on which of these grounds McCullough & als. v. Sommerville proceeded. In either case, it is a direct authority for the decision which we now make, in reference to the construction and effect of the deed in the present case.
But if McCullough & als. v. Sommerville proceeded on the ground that the partnership assets must, by a general rule of equity, be applied first to the payment of the partnership debts, and that this right could not be controlled by the execution of a deed of trust, I do not think it can be considered as necessarily holding a corresponding doctrine in reference to the separate property and separate debts of the partners. Tor, as I have already said, justice to the individual creditors required that the deed should be reformed for their benefit, when it was reformed for the benefit of the partnership creditors. It *would have done violence to the intention of the grantor, as well as to the claims of his separate creditors, to reform the deed in one part and let it stand as to the other. Besides, whatever may be the general rule of equity in the application of individual and partnership assets, it is very doubtful, to say the least, whether it ought to control the power of a partner to appropriate his separate property, by deed of trust, to the payment of his debts as a partner in preference to his separate debts. They are equally his debts, and equally binding on him in law and conscience. In Jackson v. Cornell, 1 Sanf. Ch. R. 348, it was held by Vice-Chancellor Sanford, that a partner cannot make a valid assignment of his individual property for the payment of debts, for which he is bound as a partner, in preference to his individual debts. He rested the decision on the ground that there is a general rule of equity which requires that, in case of insolvency, the separate property of a partner shall be applied first to the payment of his separate debts, as in bankruptcy, and that the partner could not control the operation of this rule bj’ an assignment. In the case of *666 Whitely, McConkey & Co. v. May & als., decided in the Circuit Court of Petersburg in 1850 by Judge Scarburgh, and reported in 1 Liv. N. S. Law Mag. 442, the case of Jackson v. Cornell was expressly overruled, on the ground that there is no such rule of equity as supposed by the Vice-Chancellor, and it was held, that a deed of trust made by an insolvent merchant, by which he conveyed his individual property to secure the payment of debts for which he was bound as a partner, in preference to his individual debts, was valid. I applied to this court in term for an appéal, citing Jackson v. Cornell and McCullough & als. v. Sommerville, but the application was denied.
With these explanations, I am content to follow the authority of McCullough & als. v. Sommerville in this *case. It removes the only difficulty I have felt. The hardship complained of by the appellants is chargeable to the doctrine long since fully established by the decisions of this court, that an insolvent debtor may convey his property in trust for such of his creditors as he may choose to prefer, and exact a release as a condition of participation in the trust fund.
RIVES, J.
There is only one provision of the deed of trust in this case which admits of serious question and debate. It is the second clause, whereby the trustee is required to ‘ ‘distribute ratably any surplus remaining after the discharge of the debts in schedule B, among such of the creditors of the firm of Rogers, Riddick & Co. and of the late firm of Rogers, Adams & Co. embraced in the schedule marked C as shall, within the period named, sign the deed— thereby accept such ratable dividend in discharge of the debt due them, by the said firms of Rogers, Riddick & Co. and of Rogers, Adams & Co., and thereby agree to release said several firms and the members thereof from all manner of obligation or liability at law or in equity on account of said debts. ” That it is the right and privilege of a debtor, devoting his whole property by deed to the payment of his debts, to prefer one creditor or class of creditors to another; and to exact a release of them, is fully established by the decisions of this court. I, also, fully concur with the President in the satisfactory and conclusive replies he has given to the other exceptions of the appellants to this deed. But after mature reflection, I am unable to give my assent to his treatment of this particular provision of the deed, that I have just cited. I cannot, therefore, avoid with propriety a concise statement of the grounds of my dissent.
All of the debts provided for in this deed, with the exception, perhaps, of house rent, are partnership debts; *and the effects, partnership effects; with the exception of the Texas lands belonging to Wm. H. Rogers individually. But the vice of the deed, consists in the confusion of the social assets and social debts of two separate firms, namely, of Rogers, Riddick & Co. and Rogers, Adams & Co. This is more startling upon a comparison of the respective conditions of these firms; the former, exhibiting a surplus of assets beyond liabilities of $25,279.59; and the latter, a similar surplus of only $4,414.19. The competency of Wm. H. Rogers and James E- Riddick to convey by this deed, the assets of Rogers, Adams & Co. is not contested; but where do the parties to this deed get the right to bring the creditors of Rogers, Adams & Co. into a ratable participation with the creditors of Rogers, Riddick & Co. in the assets of the latter firm? It is conceded, no such right exists; and that if such is the true legal effect of tliis' provision, it is invalid. But it is claimed that his court has a right to reform the deed in this respect, and require these partnerships to be settled separately and apart, by devoting to each its own particular account of social assets and social liabilities. It would be too monstrous to suppose that the individual members of the firm of Rogers, Riddick'& Co. could by any device bring the creditors of another firm into the distribution of their social effects. It would be a voluntary provision, without consideration, and therefore void, to attempt thus to create a lien in favor of creditors of another concern, to which some of the grantors in the deed chanced to belong.
But it is asserted, that while such is the plain and unmistakable declaration of the deed, the law ascribes to it a different effect, and construes it distributively in reference to the two partnerships. This pretension seems to me to proceed from a misconception of the case of McCullough & als. v. Sommerville, 8 Leigh 415, which is relied upon for this position. The grounds of discrimination are *not obscure. In that case, the confusion was of private, with social debts and assets. On the face of that deed, there was no mention or appearance of a partnership; the evidence of it was extrinsic; and it was due to subsequent revelations that it appeared that the grantor had by his deed jumbled his individual with his social funds. But here it is not a question of that kind; there is no mingling of individual with partnership funds in the sense in which I am now treating this case; but the attempt is made to throw into hotch-potch the respective assets of two separate firms, and bind the creditors of each to a ratable distribution thereof. In that case, the reformation of the deed was predicated of the intention of the grantor. Judge Carr imputes this commingling of private with social funds to “ignorance and mistake;” and the decree of the court conclusively shows that this distributive -construction was resorted to as the means of arriving at “the justice of the case and the prqbable intent of the grantor.” Its language is, “that as the purpose of the deed was to provide for certain bona fide creditors of the firm, as well as for individual creditors of said Edward McCullough, although the deed does not devote the social fund exclu *667 sively to the social creditors, and the separate fund to the individual creditors; yet it will be proper for the court, in the exercise of its undoubted powers, to reform the deed in this respect, by throwing' each class of creditors upon its own fund, and thus reach the justice of the case and the probable intent of the grantor.” No wrong or injury could result from this course. It was the dedication of the individual property to individual debts, and of social assets to social debts; and could not be said to contravene the intentions of the grantor, if it did not promote them, as was alleged. But no such principle exists here; the intention here is clear that creditors of two separate firms shall be required to assent to the ratable ^distribution of the respective. assets among them in common, and the acceptance of such ratable dividends in discharge of their debts, under the penalty of forfeiting all interest in the trust. If, therefore, this clause is to be reformed in the case at bar, let be done so as to preclude injury to the complainants in this suit, by not leaving them exposed to this penalty. The language held out to them is virtually this: “Your objection to the provision entitling the creditors of another firm to share with you in the assets of Rogers, Riddick & Co. is proper; this provision is invalid and operative; but yet you must abide the penalty you have incurred by failing to sign the deed in the prescribed time; and while the deed is reformed in this respect, you take nothing by it, but the benefit enures to others.” What is the excuse for this partial emendation of the deed? It is that the legal effect of it should have been known to the complainants, and they should have signed the deed and relied upon obtaining this redress. But in my view, this case of McCullough & als. v. Sommerville is authority only for this position, namely, that where the effects of a firm and its acting partner are promiscuously devoted by trust deed to individual and social debts, the court will throw each class on its peculiar fund; and is, by no means, authority for this other position, that the court will proceed a step further, and uphold, by analogy thereto, the jumbling of two partnership concerns through this ingenious function of construing distributively such a different provision for the adjustment of partnerships. Rogers, Riddick & Co., if they had made a common provision for social debts and the debts of the individual members of that firm, could have been well understood by their creditors, or, at least, the legal advisers of such creditors, under the treatment of such a provision in this case of McCullough v. Sommerville; but when they undertook, as by this deed, to bring *the creditors of another partnership, namely, Rogers, Adams & Co., into the distribution of their social assets, namely, the effects of Rogers, Riddick & Co. and e converso, what countenance is afforded by that case to the wholly different pretension here? It is allowable, under that decision, to confound in a trust, private with social funds and debts, and the apparent wrong is rectified by an equitable adjustment thereof in the mode already indicated; but I most respectfully submit, it is no more allowable for one partnership to charge its assets with the debts of another partnership, than it would be for an individual to charge his assets with the debt of another.
Bet us look into .the principle of that decision. McCullough was responsible in solido for the partnership debts no less than for the individual debts; and there was, therefore, no objection to reform the deed in this particular, either in conformity with the legal presumption of his intention, or with a fixed rule of equitable construction or relief. But Rogers, Riddick & Co. were not responsible, as a firm nor as individual members, for the debts of Rogers, Adams & Co., and it was not competent for them to dedicate the respective assets of each interchangeably to the common ratable satisfaction of the respective creditors of each. Such an attempt is simply nugatory; it is voluntary and without consideration moving from the creditors of Rogers, Adams & Co. to the grantors in the deed, ^specially should this attempt be avoided, when we consider the feature of a release, which did not exist in the case of McCullough & als. v. Sommerville. In the case of Phippen v. Durham & als., 8 Graft. 478, Judge Baldwin, in treating of this condition of a release, uses this language: “The effect of such a condition is to give the whole benefit of the trust to the creditors who comply with it, to the exclusion of those who fail to do so within the prescribed period. It has somewhat the nature of a ^forfeiture; and there ought to be perfect fairness and good faith on the part of the creditors seeking to avail themselves of it.” It seems to me scarcely consistent with “fairness and good faith” to give to the signing creditors alone, the benefit of the reformation of the deed accorded in this case; and to exclude therefrom the victims of this forfeiture. The penalty is an integral part of this clause; it cannot be separated from it; and, in my view, should share its fate.
This case of McCullough & als. v. Sommerville subsequently became the subject of examination and discussion in Morris’ adm’r v. Morris’ adm’r & als., 4 Gratt. 293. Judges Daniel and Brooke united in considering this case as establishing that the rule in bankruptcy affecting separate and joint creditors in their resort to individual and joint funds was to be regarded as a general rule of equity prevailing in this Commonwealth. On the contrary, Judges Allen and Cabell did not so interpret this authority; but considered the reforming of the deed, by throwing each class of creditors in its appropriate fund, as the means adopted by the court of “reaching the justice of the case and the probable intention of the grantor.” The court was thus divided in opinion; and the instruction of the Judge below to the commissioner stood, namely, *668 “that joint or partnership creditors were not entitled to credit out of the separate estate of a partner until separate creditors were paid.’'’ This is conformable to the doctrine of the Supreme Court of the United States in the case of Murrill et al. v. Neill et al., 8 How. U. S. R. 414.
So far as this present case is concerned, it is not, in iny view, material to settle the question growing out of these discussions upon the case of McCullough & als. v. Sommerville in the later one of Morris’ adm’r v. Morris’ adm’r & als. Whether the reference óf such classes of creditors to their respective funds is a fixed rule of equitable interposition *in all cases, or fluctuates with the actual or presumed intention of the grantor in each case, is a question that has no bearing upon this commingling of the accounts of one partnership with the accounts of another partnership. Eor the present, therefore, I may content myself with the convenient refuge, “non nostrum, tantas componere lites.’’
It is pertinent to our present inquiry to cite a striking criticism of Judge Allen upon this case of McCullough & als. v. Sommerville in these words: “Where the court found their authority to reform a deed so as materially to change its operation, after just determining it was made in good faith and by a party having full authority to convey, I am at a loss to conceive; and this, too, without any evidence of mistake on the part of the grantor.’’ How much more questionable is this intervention in the case at bar, when it is in contravention of the clear intention and the whole scheme of the deed; and of the justice of the case in excluding the penalty or forfeiture from the scope of the decreed reformation of the deed?
I do not object to the reforming of the deed; I may question and doubt the authority to do so; such relief, so far as it goes, meets my concurrence; but it stops short of the full redress to which, I think, the complainants are entitled.
This brings me to consider the most material point of my dissent. It consists in my view and treatment of this obnoxious clause of the deed. I cannot agree in ascribing to it a legal import in conflict with its terms. I have endeavored to show there is no authority for doing so. I cannot defeat its operation by such a construction, however ingenious; nor can I consent, while overruling it as to signing creditors, to leave it in full force against the non-signing, whose objections to it are viitually sustained by the court here.
I regard the whole clause, inclusive of the penalty, as ^invalid and inoperative. I do not impeach the bona fides of the grantors — -I do not stigmatize the clause as actual fraud; it is, doubtless, constructively so, because of foisting upon one partnership creditors of another partnership, and therefore strangers to it. The question therefore arises, whether it can be separately annulled without setting aside the whole deed. Actual fraud, within the cognizance of the parties, would vitiate the whole deed; but no principle of law or reason seems to me to inhibit the setting aside of an illegal and, therefore, an inoperative clause, at the same time that other parts, of the deed are sustained. Even in the case of actual fraud affecting some of the debts secured by the deed, this court has declined to pronounce a conveyance thus tainted void as to a fair and bona fide creditor, having no notice of any dishonest purpose to the part of the grantor, so far as his indemnity was concerned. This was the case of Billups v. Sears & als., 5 Gratt. 31. This doctrine lodges with the court a virtual function of expurgation, and is far ahead of the modest pretension I advance, to-annul an inoperative clause of a trust deed. But this question has been so fully examined, and the authorities so satisfactorily cited and reviewed by Judge Tucker in the case of Skipwith’s ex’or v. Cunningham & als., 8 Leigh 271, I cannot better set forth and corroborate my views than by a copious extract from his opinion in that case. It will save any exposition of my own views upon this point, or any comment upon the authorities he cites. It will also be seen that he foreshadows and justifies by anticipation the decision I have just quoted of Billups v. Sears & als. He says, on page 293: “I cannot agree that all the creditors are to lose the benefit of this security for the payment of their debts because an improper provision, deemed fraudulent by construction of law, has been inserted in the deed. I am aware that a distinction has been taken and sustained *in some cases between a deed avoided by statute and one which is only constructively fraudulent upon equitable principles. 14 Johns. R. 458 ; 20 Id. 442. But I think there is another distinction. Where a deed is made for the security of various creditors, whose claims are distinct and unmingled with each other, and where part are illegal and fraudulent, and another part are fair and untainted with fraud, the security shall not be avoided as to the latter, provided they have given no aid any way to the concoction of the fraud. A deed of that character ought to be considered distributively, and, while it is avoided in part, it should be effectual as far as it is good. If it were otherwise; then a deed of trust to secure the payment of ninety-nine just debts would be avoided by the fact that the hundredth was for usury or gaming; for the statute has declared all gambling or usurious securities to be void. This cannot be; and accordingly this court, in the case of Kemper v. Kemper, &c., 3 Rand. 8, decided that where the transaction is of such a nature that the good consideration can be separated from the bad, the court will separate them, and consider the deed valid so far as it is entirely distinct from and unaffected By the illegal consideration. So, in Skipwith v. Strother, &c., 3 Rand. 214, where part of a bond was for gaming, and so in Fleetwood v. Jansen, 2 Atk. 467, there *669 ■cited, a mortgage, in part for money lost at play, was avoided as to that, but held as a security for what was justly due. I am aware, indeed, that in Garland v. Rives, the deed was avoided in toto; but there a gross fraud was committed upon the creditor, and the case affords no precedent for the case at bar. But even in that case, Judge Green admits that a deed may be good as to part of the grantees and void as to others. 4 Rand. 309. As where a deed is made to secure a just debt, and the equity of redemption is reserved to a stranger or to the family of the debtor; such a deed would *be valid as to the creditor, but void in respect to other creditors as to the reservation of the equity of redemption. Ibid. So here the deed is truly of no effect as to other creditors in so far as the surplus goes; but it is valid and available as a security to the creditors specified, and those assenting to the composition. ’ ’
The authority of this opinion, and the force of its reasoning, justify the conclusion that the obnoxious provision of this deed can be separated from its other provisions and annulled without affecting them. I do not understand my brothers as disagreeing with me upon the illegality of subjecting the assets of two concerns interchangeably to the creditors of each; but they remedy it by a reformation of the deed, which I think questionable, and not sanctioned by the authority of McCullough & als. v. Sommerville, which they invoke to that end. Besides, they leave in force the condition of forfeiture annexed to this invalid provision. The relief which I am disposed to grant would be the abrogation of the whole clause as illegal and inoperative, while the bona fides of the deed, and its obligations in other respects, are not assailed. In this difference of opinion, therefore, I may be permitted to take to myself the consolation of believing that, in my disposal of this case, no hardship or injustice would ensue upon the failure to sign a deed with a provision admitted to be illegal, but claimed here to be susceptible of an equitable interpretation at war with its terms.
For these reasons, I cannot concur in the affirmance of the decree below.
Decree affirmed.