95  275
96  600
96  602

95  275
98  666

# Richmond.

## CRAIG & BUMGARDNER, TRUSTEES, v. HOGE & HUTCHINSON.

### NOVEMBER 18, 1897.

1. CONFLICT OF JURISDICTION—*How Determined.*—In case of conflict of jurisdiction between two courts having concurrent jurisdiction the general rule is that the court which first acquires cognizance of the controversy, or obtains possession of the property in dispute, is entitled to retain it until the end of the litigation, and should decide all questions which legitimately flow out of the controversy. Until then, all proceedings in the second suit should be stayed.

2. JURISDICTION—*How Acquired—Conflict of Jurisdiction.*—Jurisdiction of a court is acquired by the issue and service of process, and, in case of conflict between courts of concurrent jurisdiction, the date of service of the process determines the priority of the jurisdiction.

3. CONFLICT OF JURISDICTION—*Creditor's Bill—Case at Bar.*—Technical creditor's bills are exceptions to the general rule which pertains to a conflict of jurisdiction between courts of concurrent jurisdiction, but a bill which assails one of several debts secured in a deed of trust, and seeks to obtain its place in the distribution of the trust fund, is not such a bill as excepts it from the general rule, and must await the termination of a prior suit brought by the trustee for the purpose of administering the trust fund.

4. TRUSTEES—*Suit to Administer Trust—Fraudulent Debts—Rights of Unsecured Creditors.*—In a suit by trustees, to administer, under the order of the court, a trust fund created by deed of trust to secure creditors, it is entirely competent for the court to pass upon the validity of any debt secured in the deed. Creditors not secured may, in a proper case, be admitted parties, raise all proper issues, and obtain complete relief.

5. FRAUDULENT CONVEYANCES—*Lien of Attacking Creditor—Fraudulent and Bona Fide Debts Secured by Same Deed.*—A creditor who successfully assails a deed of trust on the ground that it secures a fraudulent debt, along with *bona fide* debts, is not entitled to be substituted to the position formerly occupied by the fraudulent

debt. His lien, if not previously acquired, dates only from the commencment of his suit, and is subordinate to liens previously acquired. The deed of trust is valid as to the *bona fide* debts secured, and the fraudulent debt is eliminated, and treated as if it had never been inserted in the deed.

6. CHANCERY PRACTICE—*Dominion of Complainant—Order of Reference— Second Suit by Another Party—Case at Bar.*—A suit by trustees to administer the trust is under the dominion of the complainants until there has been an order of reference, and no creditor who is not a party to the suit can become such without the leave of the court, which cannot be obtained without consent, until the next term. Although this may occasion some delay, it cannot justify the institution of another suit by such creditor to accomplish what could be effected in the pending suit. In the case at bar, the delay would have been far preferable to the conflict between the two co-ordinate courts having concurrent jurisdiction.

Argued at Staunton.    Decided at Richmond.

Appeal from a decree of the Hustings Court of the city of Staunton pronounced February 13, 1895, in a suit in chancery wherein the appellees were the complainants, and the appellants were the defendants.

*Reversed.*

The opinion states the case.

*Craig & Hackman* and *J., & J. L. Bumgardner,* for the appellants.

*A. C. Braxton,* for the appellees.

RIELY, J., delivered the opinion of the court.

John S. McCorkle, on April 28, 1894, conveyed, by deed, to William E. Craig and J. Lewis Bumgardner, all his real and personal property to secure in four classes his numerous creditors. There were prior liens on parts of the real estate so con-

veyed, some of which were secured by deeds of trust, and others by the retention of the vendor's lien.

On May 5, 1894, the said trustees, Craig and Bumgardner, filed their bill in the Circuit Court of Augusta county against the trustees and beneficiaries in the prior deeds of trust, and the holders of the vendor's liens, for the purpose of having accurately ascertained, under the orders of the court, the liens binding the real estate, and the order of their priority. The bill alleged as an additional reason for invoking the jurisdiction of the court that since the execution of the deed of trust to the complainants large numbers of the debts secured therein had matured, and been paid by the endorsers thereon, so that it was necessary that it should be ascertained by a commissioner of the court to whom the debts were now payable. The bill concluded with the usual prayer for general relief. Process was duly executed on all the defendants, and the Circuit Court hence acquired jurisdiction both of the parties to the suit, and of the trust subject—the matter of the controversy.

William Patrick, trustee in two of the prior deeds of trust, subsequently, to-wit, on June 22, 1894, advertised for sale the part of the real estate so conveyed to him, and thereupon Craig and Bumgardner, the complainants in the suit in the Circuit Court, upon a petition to the judge of that court, obtained, on July 18, 1894, an order restraining the said Patrick from selling, as trustee, the said real estate.

This was the standing of the cause on October 31, 1894, when Hoge and Hutchinson, creditors of John S. McCorkle, filed their bill in the Hustings Court of Staunton, on behalf of themselves and all other creditors who should come in and contribute to the costs and expenses of the suit, against Craig and Bumgardner, trustees, and John S. McCorkle and Mary J. McCorkle, his wife, in which they charged that the debts of Mary J. McCorkle, secured in the first and second classes of the deed of trust to Craig and Bumgardner, were voluntary and fraudulent, and were so secured for the purpose, and with the

intent, of delaying, hindering, and defrauding the creditors of the grantor, and prayed that they be pronounced by the court to be null and void, and the complainants be declared to have, by virtue of their suit, a first lien on the moneys, which Mary J. McCorkle would have been entitled to receive on account of her debts under the provisions of the deed of trust to Craig and Bumgardner, if her debts had been valid. At the time of the institution of this suit neither Hoge and Hutchinson, nor their counsel, knew of the suit that had been brought by Craig and Bumgardner, trustees, in the Circuit Court of Augusta county.

On November 21, 1894, the Hustings Court of the city of Staunton, with full knowledge of the pendency of the suit in the Circuit Court, and against the protest of Craig and Bumgardner, trustees, who were defendants to the suit in the Hustings Court and complainants in the suit in the Circuit Court, entered a decree directing one of its commissioners to inquire and report what was the status of the cause in the Circuit Court; whether any of the claims secured in the first and second classes of the deed of trust executed to Craig and Bumgardner were without valuable consideration or fraudulent; the amounts due to the complainants and to the parties who had filed petitions in the suit, with their respective priorities; what dividends would be applicable under the deed of trust to Craig and Bumgardner to any debts secured in the first and second classes which should be found to be voluntary or fraudulent; and what would be a reasonable and proper fee to be allowed to the plaintiff's attorney out of any fund that should be recovered in that cause for the plaintiffs and the petitioners.

On the same day, but a few hours later, the Circuit Court, which was then holding its first term since the suit brought in it by Craig and Bumgardner was matured, entered a decree referring the cause to one of its commissioners to take an account of all the real estate conveyed to Craig and Bumgardner, trustees; the liens thereon; the debts secured in the said deed; and

of the transactions of the trustees, together with any special
matter deemed by the commissioner proper, or required by any
party in interest to be stated.    The court had directed, on a
previous day, that such a decree be entered, but it was not pre-
pared by counsel and presented to the court to be entered on the
order book until that day.

The Hustings Court, upon the coming in of the report of its
commissioner as to the status of the suit in the Circuit Court,
enjoined Craig and Bumgardner, trustees, "from collecting in,
selling, paying out, or otherwise disposing of any of the prop-
erty conveyed to them by the trust deed of J. S. McCorkle
until the further order of the court"; and, at its next term, it
overruled the exception taken by the trustees at the previous
term to the report of the commissioner, and ordered him "to
proceed to complete the execution of the order of reference" of
November 21, 1894.

The record presents a case of conflict of jurisdiction between
two co-ordinate courts of the state, having concurrent jurisdic-
tion; and the question for decision on the appeal here is, whether
the Hustings Court had the right to proceed in the suit brought
in it by Hoge and Hutchinson after Craig and Bumgardner,
trustees, had instituted their suit in the Circuit Court.

In cases of conflict of jurisdiction, it is well settled as the
general rule that between two courts of concurrent jurisdic-
tion, the court which first acquires cognizance of the contro-
versy, or obtains possession of the property in dispute, is en-
titled to dispose of it without interference or interruption from
the co-ordinate court.   Having first acquired jurisdiction, it is
entitled to retain it until the end of the litigation, and should
proceed to decide all questions which legitimately flow out of
the subject matter of the controversy in the case, and finally
dispose of it.    Wells on Jurisdiction of Courts, sec. 156; *Haden
v. Garden*, 7 Leigh 157; *City of Opelika v. Daniel*, 59 Ala. 211;
*Brooks v. Delaplaine*, 1 Md. Ch. Dec. 351; *Brown v. Wallace*,

4 G. & J. 479; *Carson* v. *Dunham*, 149 Mass. 52; *Gay, Hardie & Co.* v. *Brierfield Coal and Iron Co.*, 94 Ala. 303; *Peck* v. *Jenness*, 7 How. 624; *Shelby* v. *Bacon*, 10 How. 56; *Freeman* v. *Howe*, 24 How. 450, 461; *Smith* v. *McIver*, 9 Wheaton 532; *Buck* v. *Colbath*, 3 Wall. 334; *Union Trust Co.* v. *Rockford, R. I. & St. L. R.Co.*, 6 Bissel 197; *Gaylord* v. *H., W., M. & C. R. Co.*, Id. 286; and *Sharon* v. *Terry*, L. R. A. 572.

The corporation courts of the state have, within their respective limits, the same jurisdiction as the circuit courts; and, therefore, the Circuit Court of Augusta county. and the Hustings Court of the city of Staunton, with respect to the matters in controversy in this cause, had concurrent jurisdiction.

Jurisdiction is acquired by a court by the issue and service of process, and, in a case of conflict of jurisdiction, the priority of jurisdiction is determined by the date of the service of the process. *Bell* v. *Ohio, L. & T. Co.*, 1 Biss. 260; *Mutual L. Ins. Co.* v. *Univ. of Chicago*, 6 Fed. Rep. 443; and *Owens* v. *Ohio Central R. Co.*, 20 Fed. Rep. 10.

The suit of Craig and Bumgardner in the Circuit Court having been brought, and the process executed before that of Hoge and Hutchinson in the Hustings Court was even· instituted, the latter court, in accordance with the well settled general rule, should have refused, when the existence of the suit in the Circuit Court was brought to its notice, to proceed in the case before it during the pendency of the prior suit.

The general rule was conceded by the learned counsel for the appellees, but it was claimed that the suit in the Hustings Court was, for several reasons, either not within the rule, or formed an exception to it.

It was contended that the suit in the Hustings Court was a creditors' suit, and that an order of reference convening the creditors having been first made in it, that court had the prior right to proceed. What are technically known as creditors'

suits do form an exception to the general rule which pertains to a conflict of jurisdiction between co-ordinate courts, for in that class of suits, each suit has the same general object, and contemplates the same general relief. It is brought for the administration of the entire fund for the benefit of all the creditors according to their respective rights, and each suit having therefore the same common object, and being for the benefit of all the persons interested, no other creditor is required to await or rely on the diligence of him who has first instituted his suit, for until a decree of reference, each complainant has control of his own suit, and may dismiss it before a decree of reference is made in it, but after such a decree is made in any suit, all proceedings in the other suits—even in that first brought—must be stayed. *The Piedmont & Arlington L. Ins. Co.* v. *Maury*, 75 Va. 508; and *Stephenson* v. *Tavener*, 9 Gratt. 398.

But this is not such a creditors' suit. It did not have for its object the administration of the trust fund among the creditors generally, but sought primarily to secure a lien upon, and to divert to the payment of the debts of the complainant, the moneys which certain debts secured in the first and second classes in the deed to Craig and Bumgardner, and which were charged to be fraudulent would · be entitled to receive, if they were valid. Nor was the order of reference made by the Hustings Court the usual one, convening all the creditors, and thus enabling them to come in under the decree, prove their debts, and obtain their dividends, but was limited to the special object of the bill. The case does not fall within the exception allowed in favor of creditors' suits.

The bill in the suit in the Circuit Court, while not technically drawn, nor as full perhaps as it should be, was nevertheless substantially an application to the court to take charge of the trust fund and have it administered by the trustees under its orders; and, in doing so, it was entirely competent for the court to pass upon the validity of any debt secured in the deed of

trust. The appellees had the right to come into that suit and ask to be formally made parties to it, to raise all proper issues or questions, and obtain full relief, without multiplying suits, and causing all the perplexity and embarrassment produced by their separate suit in the Hustings Court.

But it was claimed that conceding that it was competent for the court in that suit to administer the trust fund, decide upon the validity of the debts secured, and settle the accounts of the trustees, yet that the complainants in this suit could not obtain in that suit the full relief to which they were entitled under sec. 2460 of the Code; that they could not by any proceeding in that suit be substituted to the right of any creditor whose debt they should successfully assail as fraudulent, and acquire a prior lien on the moneys that would have been paid on his debt if it had not been adjudged invalid. Nor could they be so substituted, nor acquire such prior lien or preference by a separate suit. The effect of adjudging any debt to be invalid, or void, on the ground of fraud or for other cause, or of setting aside the deed as to a particular debt, would simply be to eliminate such debt from the deed, and leave the deed to stand just as if such debt had never been inserted in it, and would not be to substitute in its place the debt of the attacking creditor, nor promote him to the rank or order of priority of the excluded creditor. The statute simply provides that the attacking creditor shall have all the relief in respect to the estate or fund which he would be entitled to after obtaining a judgment or decree for his claim, and gives him a lien on the estate or fund from the time of bringing his suit. His lien, however, dates only from the commencement of his suit, while the lein of the creditors secured in the deed, whose debts are valid, dates back to the execution of the deed, irrespective of the class in which they may be secured. The attacking creditor does not and cannot acquire priority over existing liens. Though one or more of the debts secured be eliminated from the deed for any cause, or the deed be set aside as to them, it remains unimpaired as to the valid debts

which are secured. *Skipwith* v. *Cunningham*, 8 Leigh. 271; *Billups* v. *Sears*, 5 Gratt. 31; *Gordon* v. *Cannon*, 18 Gratt. 423; and Burrill on Assignments, (6th ed.) sec. 82 and note 2. Therefore, where the deed is not wholly set aside, the lien of the creditors as to whose debts it remains valid is prior to the lien that may be acquired by the attacking creditor, and their debts must be first paid. This is the necessary result of the extent of the relief prescribed by the statute. The same conclusion has been reached by other courts of last resort, whose states have a similar statute. *Cohn Bros. & Co.* v. *Ward*, 32 W. Va. 516; and *Hardcastle* v. *Fisher*, 24 Mo. 70. So that precisely the same relief was open to Hoge and Hutchinson in the suit in the Circuit Court as in the suit instituted by them in the Hustings Court.

It was further argued that the appellees, not having been formally made parties to the suit in the Circuit Court, could not make themselves parties to it except by the leave of the court at its next term, and that until an order of reference, convening all the creditors, had been made in it, they could not prevent the complainants from dismissing their suit. Let this be conceded, and it follows that the moment the suit was dismissed, all jurisdiction by the Circuit Court would end, and the obstacle to the institution or maintenance of their separate suit be immediately removed. But this, it was objected, would result in much delay. It could not result in greater delay than has been caused by the separate suit brought in the Hustings Court, which was instituted only ten days before the commencement of the regular term of the Circuit Court, when it entered the usual order of reference, convening all the creditors, and when the appellees could have applied to be formally made parties, and have litigated the validity of the debts they have assailed by their separate suit. But suppose this course would have resulted in some delay! Such delay would have been far preferable to the pernicious results that must ensue from a con-

flict between co-ordinate courts having concurrent jurisdiction. In this particular instance the Circuit Court might have adjudged that the debts to Mary J. McCorkle were just and valid, and ordered that the trustees pay them out of the trust fund in the order in which they were secured, while the Hustings Court might have pronounced them fraudulent and void, and inhibited the trustees from paying them. Obedience to the orders of the one court, in such event, would be in direct contempt of the orders of the other—a state of things ever to be deplored, and which should never arise, if possible to be avoided.

When two courts have concurrent jurisdiction over the same subject matter, it is necessary and eminently wise that the court in which the suit is first commenced should be allowed to retain jurisdiction until the litigation is settled. "This rule," as was said by Chancellor Johnson, "would seem to be vital to the harmonious movement of courts, whose powers may be exerted within the same spheres, and over the same subjects and persons. The only course of safety, therefore, is, when one court, having jurisdiction over the subject, has possession of the case, for all others with merely co-ordinate powers to abstain from any interference. Any other rule will unavoidedly lead to perpetual collision, and the production of the most calamitous results." *Brooks* v. *Delaplaine*, 1 Md. Ch. Dec. 354.

The decrees of the Hustings Court, which are complained of, must, therefore, for the reasons herein given, be reversed; the restraining order entered at its January term, 1895, against Craig and Bumgardner, trustees, be set aside; and all further proceedings in the cause be stayed during the pendency of the suit in the Circuit Court.

*Reversed.*